UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| In re: | Case No.: 18-13341 |
| Thomas G. Gialamas, | Chapter 11<br>Judge Thomas M. Lynch |
| Debtor. | |

---

Thomas G. Gialamas,

                Plaintiff,

v.                                                   Adv. No. 20-00062

Fiduciary Partners Trust Company
and
Old Sauk Trails Park Limited Partnership,

                Defendants.

---

## MEMORANDUM DECISION

The adversary complaint filed by the Debtor seeks declaratory judgment that claims he may have "in his capacity as primary beneficiary" of a spendthrift trust were not waived and released as part of the chapter 11 plan confirmed in this case. (Compl. ¶ 1, ECF No. 1.) After Mr. Gialamas withdrew his proposed plan of reorganization in his bankruptcy case on March 26, 2020, the court conducted an evidentiary hearing on the competing plan of Old Sauk Trails Park Limited Partnership, following which, on March 30, 2020, it confirmed the Old Sauk plan over the Debtor's objection. The Debtor did not appeal that order. Mr. Gialamas subsequently received a discharge and the bankruptcy case closed on December 30,

2020.[1]

The Debtor alleges in his adversary complaint that section 4.5(d) of the confirmed plan and its provision waiving and releasing all pre-confirmation causes of action against, among others, the Defendants Old Sauk Trails Park Limited Partnership and Fiduciary Partners Trust Company, does not apply to certain unspecified claims that the Debtor purports to hold against the Defendants in his capacity as the primary beneficiary of the spendthrift Thomas G. Gialamas Cosmos II Trust (the "TG Subtrust"). The complaint further alleges these claims "are not property of the Estate and were not administered or released pursuant to" the confirmed plan. (Compl. ¶ 1.)

After the Defendants answered the complaint, the parties filed cross motions for judgment on the pleadings under judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (incorporated by Fed. R. Bankr. P. 7012). Each motion argues that the material facts are not in dispute and judgment on the merits may issue based on the contents of the pleadings. For the reasons set forth below, the court finds that the Debtor's adversary complaint fails to state a claim for relief.

## I. BACKGROUND

In their answers to the complaint, each of the Defendants raise affirmative defenses that the complaint fails to state a claim for relief. *See* Fed. R. Civ. P. 12(h)(2)(B); (ECF Nos. 5, 8.) Now that the pleadings are closed, the Defendants seek judgment in their favor on this basis. Under Rule 12(c), after "the pleadings are

---

[1] This occurred after Debtor's counsel, who acted as escrow agent under the confirmed plan, filed a final report and account of distributions.

closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In his own cross-motion, the Debtor seeks judgment on the pleadings in his favor. The pleadings in the case consist of the complaint (ECF No. 1), Old Sauk's answer (ECF No. 5) and Fiduciary Partners' answer (ECF No. 8.)[2]

## II. STANDARD OF REVIEW UNDER RULE 12(c)

A motion for judgment on the pleadings "is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." *Archer Daniels Midland Co. v. Burlington Ins. Co. Grp.*, 785 F. Supp. 2d 722, 726 (N.D. Ill. 2011) (quoting *Cincinnati Ins. Co. v. Contemp. Distrib. Inc.*, 2010 U.S. Dist. LEXIS 6718 (N.D. Ill. Jan. 26, 2010)). A defendant's motion for judgment on the pleadings based on failure to state a claim "is subject to the same standard as a motion to dismiss under Rule 12(b)(6) [and

---

[2] In its ruling, the court will not consider several documents purported to be copies of documents filed with the Dane County Circuit Court and attached to Old Sauk's reply in support of its motion. Generally, where matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment. *See, e.g.*, Fed. R. Civ. P. 12(d); *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) ("If, however, a court chooses to consider materials outside the pleadings, the discretion ends, and the court 'must' treat the motion as one for summary judgment."). In some circumstances a court "may also take judicial notice of matters of public record without converting [the motion] into a motion for summary judgment." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (in suit against credit reporting agencies involving state court clerk's erroneous notation of money judgment in docket, district court could properly take judicial notice of entries on the state court docket). Judicial notice, however, generally is only appropriate for facts "not subject to reasonable dispute." Fed. R. Evid. 201(b).

Additionally, a party requesting judicial notice should "suppl[y the court] with the necessary information." Fed. R. Evid. 201(c)(3). Here, however, while Old Sauk attached an exhibit purporting to be the "Removal Petition" to its reply, in its answer to the complaint it "denied that Gialamas filed any 'Removal Petition' or that the Court has recognized any of the documents filed by Gialamas as having any legal effect." (ECF No. 5, ¶ 22.) The court, therefore, will not consider the document attached to the reply, nor accept Old Sauk's invitation to take judicial notice of the contents of the Dane County Circuit Court's docket or the documents filed therein.

therefore], we must determine whether the complaint states 'a claim to relief that is plausible on its face.'" *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] A defendant's motion for judgment on the pleadings based on failure to state a claim is determined on the same standard as a motion to dismiss for failure to state a claim, by "asking whether the well-pleaded factual allegations viewed in favor of the nonmoving party state a facially plausible claim for relief." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021) (citing *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018)). The court must "accep[t] as true all well-pleaded facts and dra[w] reasonable inferences in [the non-movant's] favor" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Additionally, inferences must be reasonable, and the complaint "must allege 'more than a sheer possibility'" of grounds for relief. *Denan v. TransUnion LLC*, 959 F.3d 290, 296 (7th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

---

[3] In 2007 "the Supreme Court retooled federal pleading standards, retiring the oft-quoted *Conley* formulation that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 563 and quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although *Twombly* involved a motion under Rule 12(b)(6), the Seventh Circuit has explained that if "a defendant raises a Rule 12(b) defense in a Rule 12(c) motion, a Rule 12(b)(6)-type analysis applies," and has applied the *Twombly* standard for Rule 12(c) motions asserting failure to state a claim. *Id.* at 619 (citing *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)). *See also, e.g., Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021); *Taylor v. JPMorgan Chase Bank, N.A.*, 958 F.3d 556, 562 (7th Cir. 2020); *ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017); *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017); *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017); *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016); *Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016); *Lodholtz v. York Risk Servs. Grp.*, 778 F.3d 635, 639 (7th Cir. 2015).

For when "a complaint's facts 'do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief.'" Id. at 295 (quoting *Iqbal*, 556 U.S. at 678)).

In contrast, when "a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (citing *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020)). As with a defendant's motion, "the court views all facts and inferences in the light most favorable to the non-moving party." *Id.*

The parties have consented to entry of final orders by the court in this matter. (See Compl. ¶ 3; ECF No. 5 ¶ 3; ECF No. 8 ¶ 3.)

### III. DISCUSSION

At issue in the adversary complaint is the waiver and release of claims found in section 4.5(d) of the confirmed plan. That section provides in pertinent part:

> On the Effective Date, the Debtor and Reorganized Debtor are deemed to have waived and released any and all causes of action, controversies, suits, liens, lawsuits, debts, damages, breaches of contract, breaches of fiduciary duties, business torts, or any other claims in law or equity whatsoever whether known or unknown that the Debtor has, or can have at any point in time prior to the Effective Date against Adelphia, LLC, OSTP, GFH (and all other companies directly or indirectly controlled by GFH), The Gialamas Company, Inc., Park Center II, LLC, George Gialamas, Aris G. Gialamas, Gina M. Gialamas, Demetria Gialamas-Bull, George T. Gialamas 2012 Endowment Trust, Thomas G. Gialamas Cosmos II Trust, Aris G. Gialamas Cosmos II Trust, Demetria L. Gialamas-Bull Cosmos II Trust, Gina M. Gialamas Cosmos II Trust, Gialamas Family Endowment Trust, and each of foregoing's employees, fiduciaries, attorneys' and advisors.

(Compl. ¶ 20.) The complaint seeks a declaratory judgment, notwithstanding this language, that certain unspecified claims the debtor held "solely in his capacity as primary beneficiary of the TG Subtrust, including, but not limited to claims against the fiduciaries of the TG Subtrust, are not property of Gialamas' bankruptcy estate . . . and, as such, were not administered and released through the" confirmed plan. (Compl. ¶ 1.) As noted above, this court entered an order confirming the plan one year ago and the adversary complaint does not seek relief from that order. Nor does it seek to modify the terms of the plan or identify any ambiguous terms in the plan requiring interpretation.

The complaint provides little-to-no detail about the basis, amount or even number of the supposed claims. The most detailed description in the complaint is the Debtor's allegation that:

> In February 2020, Gialamas filed a petition with [a Wisconsin state court in a pending probate case involving the TG Subtrust] seeking to remove [Fiduciary Partners Trust Company] from his role as trustee for the TG Subtrust (the "Removal Petition"). In the Removal Petition, Gialamas alleges misconduct by the Trustee, as well as by other fiduciaries of the TG Subtrust – namely, the Directing Party GFH[4] and its members.

(Compl. ¶ 22.) The Debtor's pleading does not attach the "Removal Petition" and provides no allegations about the details of Fiduciary Partners' or any other entity's supposed "misconduct," or when or in what manner it allegedly occurred.

---

[4] Elsewhere in the complaint, it is alleged that Gialamas Family Holdings, LLC, or "GFH," is the general partner and manager of co-Defendant Old Sauk Trails Park Limited Partnership. (Compl. ¶ 6.)

Instead, the complaint suggests that there is some form of live controversy before the state probate court. It alleges that the probate court "has indicated that the issue of whether the claims [the Debtor] holds as a beneficiary of the [TG Subtrust], including any claims against [Fiduciary Partners] and fiduciaries of [the trust] were property of his Estate and released under the [confirmed] Plan, is a matter appropriately determined by [the bankruptcy court.]" (Compl. ¶ 25.) But the Debtor has not explained why the state court would not have subject matter jurisdiction to rule on whether claims brought before that court have been waived or terminated. Nor is the complaint clear whether the "Removal Petition" seeks only removal of the trustee, damages or other relief. Indeed, the complaint is not even clear whether the "Removal Petition" is the sole claim for which the Debtor seeks declaratory relief or if there are others.[5]

### A. The Plaintiff Fails To Plausibly Allege The Existence Of Any Particular Claim Outside The Scope Of Waiver

If the Debtor seeks a declaration that any particular claim is outside the scope of the waiver and release in section 4.5(d), he has failed to plausibly allege grounds supporting such a determination. The waiver and release is limited to claims the "Debtor has, or can have at any point in time prior to the Effective Date" of the plan, but the Debtor does not allege or describe any claim which arose after such date. To the contrary, the complaint alleges that the Chapter 11 plan in his case "was filed

---

[5] While this determination is based only on the facts alleged in the complaint, the court notes that the Debtor is even more vague in his brief in support of his motion where he suggests that he seeks a determination not only as to claims against the named Defendants, but rather "*any and all* claims for harm to the TG Subtrust that could be brought by a beneficiary of the TG Subtrust against third parties." (ECF No. 17.)

and confirmed while the Removal Petition was pending," meaning that he admits that such "petition" was filed prior to the plan's effective date. (Compl. ¶ 23.) The Debtor also attempts to draw a distinction between claims held in his individual capacity and claims held "solely in his capacity as the primary beneficiary under" the TG Subtrust. (ECF No. 17.) This supposed distinction seems to relate more to his argument that the court lacked subject matter jurisdiction, discussed *infra*. But if he also means to argue that claims held by the Debtor in his capacity as a beneficiary of the trust are outside the scope of the waiver and release, he does not support such argument with factual allegations in his complaint. Section 4.5(d) makes no distinction as to the capacity in which the Debtor or Reorganized Debtor holds a claim and broadly categorizes such claims, expressly including not only "breaches of fiduciary duties" but also "any other claims in law or equity whatsoever." Furthermore, with no details regarding his supposed claims against the Defendants other than the vague and conclusory allegation of "misconduct," the complaint fails to plausibly state a claim for determination of any particular claim as beyond the scope of the waiver and release.

### B. The Plaintiff Fails To Plausibly Allege The Plan Contains Any Provision For Which This Court Was Without Subject Matter Jurisdiction To Confirm

Instead, the thrust of the Debtor's argument appears to be that because his beneficial interest in the TG Subtrust did not become property of his bankruptcy estate, this court was without subject matter jurisdiction to confirm a plan providing for waiver or release of claims he had against others based on or attendant to such interest. From this he suggests that any term in the plan that purports to do so is

null, void and of no effect. The Defendants each admitted that the TG Subtrust "is a spendthrift trust." (ECF No. 5 ¶ 29; ECF No. 8 ¶ 29.) Old Sauk also admits that at least the trust itself "never became property of the Estate pursuant to section 541(c)(2) of the Bankruptcy Code," (ECF No. 5 ¶ 30), though Fiduciary Partners has denied this allegation for an alleged lack of knowledge, (ECF No. 8 ¶ 30.) Section 541(c)(2) provides that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).[6]

The Defendants argue that a claim for breach of fiduciary duty against the trustee of a spendthrift trust is distinct from a beneficial interest in the trust and is not subject to section 541(c)(2). *See, e.g., In re Tawil*, 2017 Bankr. LEXIS 2165 (Bankr. D.N.J. Aug. 1, 2017); *In re Amerson*, 839 F.3d 1290 (10th Cir. 2016). But the court need not reach that issue. The Debtor mentions "property of the estate" only in connection with his argument that the plan provision is void for lack of jurisdiction. He has identified no other real and substantial dispute involving the need to determine whether a claim is or was 'property of the estate' or 'administered by the plan.' "Declaratory judgment actions are ripe and otherwise justiciable when 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Amling v. Harrow*

---

[6] Other than the conclusory allegation that the TG Subtrust "is a spendthrift trust," the complaint alleges no specific facts regarding restrictions on transfer within its operative instruments, nor were any trust documents attached to the complaint.

*Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). This requires "a 'definite and concrete,' 'real and substantial' dispute that 'touches the legal relations of parties having adverse legal interests' and 'admits of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *MedImmune*, 549 U.S. at 127).

The briefs submitted by the parties clarify that the declarations sought as to whether claims were "property of the estate" or "administered under the plan" are requested in the context of the ultimate enforceability of the release provision found in section 4.5. The Debtor leaps from the issue of property of the estate to the issue of subject matter jurisdiction to argue that bankruptcy courts lack subject matter jurisdiction to enter orders in any way affecting property which does not constitute property of a bankruptcy estate. To the contrary, 28 U.S.C. § 1334(e) provides federal courts with "exclusive jurisdiction . . . of all the property, wherever located, *of the debtor as of the commencement of [a case under Title 11], and* of property of the estate." 28 U.S.C. § 1334(e) (emphasis added). Further, 28 U.S.C. § 1334(b) provides federal courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* §1334(b).

Indeed, the Seventh Circuit has affirmed bankruptcy orders enforcing releases contained in confirmed chapter 11 plans even more remote from "property of the estate" than the one at issue in this case. At issue here is a waiver and release in a chapter 11 plan preventing the bankruptcy debtor from pursuing certain pre-

confirmation claims against a creditor and certain of its affiliates and their respective agents and fiduciaries. In *In re Ingersoll, Inc.,* the chapter 11 plan contained a release of a non-debtor from non-bankruptcy-related claims against a non-creditor. 562 F.3d 856 (7th Cir. 2009). The plan provided that the debtor's principals, the Gaylords,

> shall be released from any and all claims and causes of action by all creditors, parties-in-interest, directors, officers, shareholders, agents, affiliates, parent entities, successors, assigns, predecessors, members, partners, managers, employees, insiders, agents and representatives of the Debtors and their estates arising from or relating to the Gaylord Actions, including, without limitation, any claims, causes of action, and counterclaims by any present or former party to any of the Gaylord Actions.

*Id.* at 862. The "Gaylord Actions" were defined as two non-bankruptcy causes of action, and the bankruptcy court, as affirmed by the Seventh Circuit, found that the Gaylords' attorney in one of those actions was permanently barred by the debtor's plan from pursing a fee dispute against them. *Id.* The Seventh Circuit highlighted that "the bankruptcy court found that the release was an 'essential component' of the plan, the fruit of 'long-term negotiations' and achieved by the exchange of 'good and valuable consideration' by the Gaylords that 'will enable unsecured creditors to realize distribution in this case.'" *Id.* at 865.

In upholding the releases of claims by a third party against a non-debtor provided in the plan confirmed in *Ingersoll*, the Seventh Circuit noted that Bankruptcy Code section 105(a) provides authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]" and section 1123(b)(6) permits plans to include "any other appropriate provision not inconsistent with the applicable provisions of the

[Bankruptcy Code]." *Id.* at 864. Authority is even more obvious in the present case, where the releases are of claims by the Debtor or the Reorganized Debtor. Section 1123(b)(3) of the Bankruptcy Code provides that a chapter 11 plan may "provide for . . . (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." 11 U.S.C. § 1123(b)(3). Thus, the Code expressly authorizes settlement not only of claims of the estate but claims of the debtor.

The Debtor next argues that while section 1123(b)(3) permits settlement of claims "belonging to the debtor," it does not permit settlement of claims belonging to the debtor "solely in his capacity as the primary beneficiary" of a trust. He offers no support for this proposition. Nor does the complaint allege any particular claim he holds solely in such capacity. Instead, the Debtor invokes Wisconsin statutes and the Restatement (Third) of Trusts for the proposition that any beneficiary, co-trustee, successor trustee, or other person acting on behalf of one or more beneficiaries has standing to bring an action against a trustee for breach of trust under Wisconsin law. (ECF No. 17 (citing Wis. Stat. Ann. §§ 701.1001(1), 701.0808(8); Restatement (Third) of Trusts § 94(1)(2012)). The waiver and release provision in Section 4.5(d) states that it is limited to claims of "the Debtor and Reorganized Debtor." It makes no distinction between whether the Debtor or Reorganized Debtor hold such claim in any particular capacity. And the adversary complaint does not allege there are any other beneficiaries of the trust, let alone—were that so—that the confirmed plan

would preclude any other beneficiaries from maintaining an action against the Defendants related to the trust.

This is not to say that every plan that waives or bars pursuit of a claim that is or may be exempted from a bankruptcy estate should be confirmed or that a debtor has no right to object to confirmation. The Seventh Circuit has suggested that at least non-debtor releases "should only be approved in 'rare cases' . . . because it is a 'device that lends itself to abuse.'" *Ingersoll*, 562 F.3d at 865 (quoting *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141-42 (2d Cir. 2005)). But even if broad third-party releases should only be rarely approved, bankruptcy plans regularly address the rights and duties of debtors and may affect both property of the debtor and the debtor's estate. *See, e.g.*, 11 U.S.C. § 1141 ("[T]he provisions of a confirmed plan bind the debtor . . . ."). However, the propriety of the confirmation order is not at issue here. The Debtor failed to timely appeal or seek reconsideration of the confirmation order and does not now attempt to do so through his complaint. It is enough for purposes of today's ruling that the court finds unavailing the Debtor's argument that the court was without subject matter jurisdiction to confirm the plan with the section 4.5(d) releases.

The complaint fails to plausibly allege any facts that would show that the court was without subject matter jurisdiction to confirm a plan containing releases of pre-confirmation claims of the Debtor against others, whether in his capacity as a beneficiary or otherwise. After reaching this finding with respect to the motions, the court would further note with some concern that while contesting the validity of this

court's orders, the Debtor does not seek relief from the confirmation order or the modification or vacation of the confirmed plan. With limited exceptions not relevant here, "the provisions of a confirmed plan bind the debtor . . . and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." 11 U.S.C. § 1141(a).

Ordinarily, "the finality of [a] Bankruptcy Court's orders following the conclusion of direct review" would "stan[d] in the way of challenging [their] enforceability." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010). The plan section the Debtor challenges was not buried in boilerplate or a matter of oversight. To the contrary, the Debtor raised the section 4.5(d) releases in his oral objection to confirmation and was given the opportunity to testify in support of his objection that the plan was proposed in bad faith. After weighing the evidence presented at the confirmation hearing, the court overruled the Debtor's objection and confirmed the plan proposed by Old Sauk. The Debtor did not appeal that ruling, did not seek reconsideration, and makes no belated request do to so in this adversary complaint. In *Espinosa,* Supreme Court cautioned that a "judgment is not void . . . simply because it is or may have been erroneous," and further warned that while Fed. R. Civ. P. 60(b), incorporated by Fed. R. Bankr. P. 9024, provides for relief from a judgment in certain limited circumstances, a motion under Rule 60(b)(4) seeking relief from an order as "void" is not a "substitute for timely appeal." *Id.* at 270.

Neither is an action for declaratory judgment a chance for a second bite at the proverbial apple or a backdoor route to evade the procedural requirements and deadlines for appeal or reconsideration of a judgment under Bankruptcy Rules 8002, 9023, or 9024.[7]

## IV.  CONCLUSION

The complaint for declaratory judgment fails to state a plausible claim for relief.  Accordingly, the Debtor's motion for judgment on the pleadings will be denied, the Defendants' joint motion for judgment on the pleadings will be granted, and judgment shall be entered in favor of the Defendants, each side to bear their own costs of suit.  A separate judgment order shall be entered giving effect to the determinations reached herein.

March 30, 2021

ENTER:

*signature*

Thomas M. Lynch
United States Bankruptcy Judge

---

[7] *See also, e.g., Int'l Ass'n of Entrepreneurs of Am. v. Angoff,* 58 F.3d. 1266, 1270 (8th Cir. 1995) (explaining that the "Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action," nor should litigants be allowed to use it "to circumvent the removal statute's deadline by using the Declaratory Judgment Act as a convenient and temporally unlimited back door into federal court").