UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

In re:

  Thomas G. Gialamas,

     Debtor.

Case No.: 18-13341

Chapter 11
 Judge Thomas M. Lynch

Thomas G. Gialamas,

    Plaintiff,

v.

Fiduciary Partners Trust Company and
Old Sauk Trails Park Limited Partnership,

    Defendants.

Adv. No. 20-00062

## <u>MEMORANDUM DECISION</u>

In his amended complaint, Thomas Gialamas seeks a determination as to whether a waiver and release provision in the plan confirmed in the Plaintiff's chapter 11 bankruptcy case bars him from asserting certain claims or causes of action against the Defendants in state court proceedings. A trial was held at which the Plaintiff demonstrated that, in a Wisconsin probate court proceeding, Fiduciary Partners Trust Company had asserted the waiver and release as a defense to the Plaintiff's request to remove it as trustee and enjoin it from disposing of trust assets and to bar the Plaintiff from objecting to its petition to approve accounts. This Court finds that to the extent the Plaintiff's claims or objections in the state court proceedings are based on acts or omissions by the Defendants on or before the

effective date of the chapter 11 plan, April 20, 2020, they are barred by the waiver and release. To the extent his claims or objections are based on other grounds, they are not barred by the plan provision. It has not been shown that the state court's rulings were inconsistent with this determination.

## I. JURISDICTION

The District Court has "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). In accordance with 28 U.S.C. § 157(a), the District Court has referred this and all other cases under title 11 to this court. W.D. Wis. Adm. Order 161. A bankruptcy court has "jurisdiction to interpret and enforce its own prior orders." *In re Kimball Hill, Inc.*, 61 F.4th 529, 533 (7th Cir. 2023) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). As 28 U.S.C. § 1334(b) confers jurisdiction on "claims 'arising under' and 'related to' bankruptcy proceedings . . . Congress's grant of jurisdiction extends to creditor conduct within the scope of a plan confirmation order." *Id.*

On the other hand, a bankruptcy court's jurisdiction is "sharply reduced" after it confirms a plan. *Glaser v. Superior Silica Sands, LLC*, No. 22-cv-99-jdp, 2023 U.S. Dist. LEXIS 17508, at *10 (W.D. Wis. Feb. 2, 2023). Courts "have consistently held that post-confirmation jurisdiction can be exercised by a bankruptcy court only to the extent necessary to interpret or implement the plan." *Id.* (quoting *Globaleyes Telecomms., Inc. v. Verizon N., Inc.*, 425 B.R. 481, 497-98 (S.D. Ill. 2010)). Therefore, as discussed further below, to the extent that the Plaintiff asks this Court to determine state law matters not involving the plan, such as whether he has the right

to certain requested distributions under the terms of a trust agreement not modified or affected by the plan, the Court has no such jurisdiction. However, the Court does have jurisdiction to interpret provisions of the plan, including whether its waiver and release provision bars assertion of certain claims under nonbankruptcy law. The parties do not dispute this jurisdiction and have consented to entry of final orders by the Court in this matter. (*See* ECF Nos. 90, 93, and 94, ¶ 18.)

## II. DISCUSSION[1]

The Court has considered the evidence and arguments presented by the parties at trial and reaches this decision after careful consideration of the substance and credibility of the testimony and the exhibits admitted in evidence, and any reasonable inferences to be drawn therefrom, together with the stipulations of the parties. In addition, the Court has taken judicial notice of the contents of the docket in the underlying bankruptcy case when appropriate. *See In re Miceli*, 587 B.R. 492, 495 (Bankr. N.D. Ill. 2018) (court could take judicial notice, when appropriate, of the docket of the case and the filings therein). From this examination, the Court finds the salient facts to be those described in the following discussion.

A. <u>Factual and Procedural Background.</u>

Mr. Gialamas, the plaintiff in this adversary proceeding and the debtor in the underlying chapter 7 case, is a beneficiary to several family trusts. His adversary

---

[1] This full discussion section sets forth the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. While most of subsection A is devoted to findings of fact and subsection B is devoted to application and conclusions of law, to the extent any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

complaint as last amended seeks a declaratory judgment against the trustee of one of those trusts, Fiduciary Partners Trust Company ("Fiduciary Partners"), and another entity related to the trust, Old Sauk Trails Park Limited Partnership ("OSTP"). (ECF No. 90.) The Plaintiff seeks a declaration of how a provision of the plan confirmed in his bankruptcy that "waived and released" causes of action and other matters against the trust (and its employees, fiduciaries, attorneys and advisors) affects certain actions and proceedings involving the Defendants.

**The Bankruptcy Case.** Mr. Gialamas had been enmeshed in litigation with creditors and his ex-spouse in the state courts of Wisconsin when several creditors filed an involuntary petition under chapter 7 against him on October 2, 2018. Shortly after this Court denied Mr. Gialamas' motion to dismiss the involuntary petition and entered an order for relief, the Debtor was permitted to convert the case to chapter 11.

This Court held a combined confirmation hearing on the competing chapter 11 reorganization plans proposed by the Debtor and by OSTP on March 25 and 26, 2020. At the conclusion of the hearing, the Court denied confirmation of the Debtor's plan and confirmed OSTP's plan (the "Plan") over the Debtor's objection. A confirmation order was entered on March 30, 2020. On April 21, 2020, OSTP filed notice declaring that the "Effective Date" referenced by the Plan occurred on April 20, 2020. Mr. Gialamas never appealed or otherwise sought to vacate confirmation of the Plan, and he does not dispute that April 20, 2020, is its "Effective Date." The Court entered a final decree and an order of discharge on December 30, 2020.

**The Confirmed Plan.** The confirmed Plan provides, among its principal features, that OSTP will repurchase and redeem Mr. Gialamas' interests in OSTP for $6,170,000 and his interests in Gialamas Family Holdings, LLC ("GFH"), another family-related entity, for $285,000. The proceeds from these payments are the main source of the assets used to pay creditors through the Plan. Article IV of the Plan provides for the treatment of claims against Mr. Gialamas' bankruptcy estate. Section 4.5(d) subordinates OSTP's allowed unsecured claims against the estate to most other general unsecured claims. However, that same provision further provides:

> On the Effective Date, the Debtor and Reorganized Debtor are deemed to have waived and released any and all causes of action, controversies, suits, liens, lawsuits, debts, damages, breaches of contract, breaches of fiduciary duties, business torts, or any other claims in law or equity whatsoever whether known or unknown that the Debtor has, or can have at any point in time prior to the Effective Date against Adelphia, LLC, OSTP, GFH (and all other companies directly or indirectly controlled by GFH), The Gialamas Company, Inc., Park Center II, LLC, George Gialamas, Aris G. Gialamas, Gina M. Gialamas, Demetria Gialamas-Bull, George T. Gialamas 2012 Endowment Trust, Thomas G. Gialamas Cosmos II Trust, Aris G. Gialamas Cosmos II Trust, Demetria L. Gialamas-Bull Cosmos II Trust, Gina M. Gialamas Cosmos II Trust, Gialamas Family Endowment Trust, and each of foregoing's employees, fiduciaries, attorneys' and advisors.

(Case No. 18bk13341, ECF No. 464, § 4.5(d).)

**The Initial Adversary Complaint.** Mr. Gialamas, at the time represented by counsel, commenced this adversary proceeding against Fiduciary Partners and OSTP on August 17, 2020. His initial adversary complaint requested declaratory relief about the meaning of section 4.5(d). It alleged, in particular, that in February 2020 he filed a petition to remove Fiduciary Partners as trustee of the Thomas G. Gialamas

Cosmos Trust II (the "TG Cosmos Subtrust" or the "TG Subtrust")[2] in the Wisconsin

probate court in the then-pending case *In the Matter of the Thomas G. Gialamas*

*Cosmos II Trust.*    Case No. 2018PR000549, Circuit Court Probate Division, Dane

County, Wisconsin (the "Cosmos Probate Case").    That petition alleged "misconduct

by the Trustee, as well as by other fiduciaries of the TG Subtrust." (ECF No. 1 ¶ 22.)

It further contended that in response to the removal petition, counsel for Fiduciary

Partners "has asserted that Gialamas waived all claims against the Trustee in the

OSTP Plan." (*Id.* ¶ 23.)  Mr. Gialamas now argues that his beneficial interest in the

TG Cosmos Subtrust is in the nature of a spendthrift trust and, in his words, is "not

part of his Estate and cannot be administered through, or released under, the OSTP

Plan." (*Id.* ¶ 24.)  His adversary complaint requests an order from this Court:

> (i) declaring that Gialamas' claims that he holds in his capacity as the
> primary beneficiary of the TG Subtrust, including claims against the
> Trustee and other fiduciaries of the TG Subtrust, are not property of the
> Estate and were not administered or released pursuant to the OSTP
> Plan; and (ii) granting Gialamas such other and further relief as it
> deems appropriate.

(*Id.* at 6-7.)

On cross-motions for judgment on the pleadings under Federal Rule of Civil

Procedure 12(c), this Court granted judgment in favor of the Defendants for the

reasons set forth in its Memorandum Decision. (ECF No. 35.)  The Court first rejected

---

[2] The TG Cosmos Subtrust is a subtrust of the George T. Gialamas 2012 Endowment Trust ("Cosmos
II").  The Cosmos II Trust was created in December 2012 as a pooled trust by and for the benefit of
children and issue of Candy and George T. Gialamas. (ECF Nos. 90, 93, and 94, ¶¶ 26-27.) The Cosmos
II Trust was subdivided into four separate subtrusts for the benefit of each child and their issue on
August 3, 2018. (*Id.* ¶¶ 27-30.)  The TG Cosmos Subtrust is the subtrust created for the Debtor as
primary beneficiary and his minor children as secondary beneficiaries. (*Id.* ¶ 30.)

Mr. Gialamas' argument that a provision in the confirmed and unappealed chapter 11 Plan affecting his relationship to trustees of the TG Cosmos Subtrust was ineffective merely because Mr. Gialamas' interest in the TG Cosmos Subtrust did not become part of his bankruptcy estate. The decision notes that case law has upheld the authority for third-party releases in chapter 11 plans[3] and that in any event the Supreme Court has recognized that a judgment confirming a plan "is not void . . . simply because it is or may have been erroneous" and that an action for declaratory judgment is not a substitute for a timely appeal. (*Id.* at 14-15 (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269-70 (2010)).) The Court also found that Mr. Gialamas failed to state a claim for relief in that he failed to plausibly allege the existence of any particular claim outside the scope of the waiver and release.

Following that ruling and the withdrawal of Plaintiff's counsel, Mr. Gialamas, now pro se, filed a letter styled "Request for Clarification" and then a motion to reconsider the Court's judgment. This motion was denied for the reasons given in the Court's order of July 20, 2021. (ECF No. 61.) Mr. Gialamas then filed a timely notice of appeal and engaged counsel to represent him in that appeal.

On February 17, 2023, Judge Conley reversed this Court's determination and judgment and remanded the matter. *Gialamas v. Partners*, No. 21-cv-481-wmc, 2023

---

[3] The waiver and release at issue here is between the *Debtor* and a third party and therefore is not the type of release of third-party creditors against other third parties currently under consideration by the Supreme Court. *See Harrington v. Purdue Pharma, L.P.*, *cert. granted* 144 S. Ct. 44 (U.S. August 10, 2023; argued December 4, 2023) (ordering briefing on "[w]hether the Bankruptcy Code authorizes a court to approve, as part of a plan of reorganization under Chapter 11 of the Bankruptcy Code, a release that extinguishes claims held by nondebtors against nondebtor third parties, without the claimants' consent").

U.S. Dist. LEXIS 27665, at *2 (W.D. Wis. Feb. 17, 2023). The District Court rejected arguments made by Mr. Gialamas attacking the validity of the chapter 11 Plan or confirmation thereof, holding that "Gialamas's claim for declaratory relief was *not* based on an argument that the bankruptcy court lacked subject matter jurisdiction to confirm the reorganization plan, or that § 4.5(d) was void for lack of subject matter jurisdiction." *Id.* at *13. The District Court also "agree[d] that it likely would be inappropriate for the bankruptcy court, or any federal court, to issue a declaration addressing hypothetical claims that had yet to be filed based on injuries that had not yet occurred." *Id.* at *12.

Instead, the District Court disagreed with this Court's conclusion that Mr. Gialamas failed to identify the claim or claims on which he sought declaration of the effect of section 4.5(d) with sufficient detail and specificity – at least for purposes of defending the motion for judgment on the pleadings. The District Court noted that a court should not grant a motion for judgment on the pleadings "unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position." *Id.* at *7 (quoting *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020)). Judge Conley further noted that if a case is dismissed in the early stages for pleading defects, the "usual standard . . . is to allow defective pleadings to be corrected at least where an amendment would not be futile." *Id.* at *7-8 (quoting *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018)). The District Court concluded that Mr. Gialamas had sufficiently met the pleading standard by alleging:

(1) he had filed a petition in probate court seeking to remove Fiduciary Partners from its role as trustee for the TGG Subtrust; (2) the removal petition alleged misconduct by Fiduciary Partners and other trust fiduciaries, including an entity that controlled OSTP; (3) the probate court defendants had responded that Gialamas's claims were barred by the Chapter 11 reorganization plan; (4) Gialamas took the position that his claims were not part of his estate and were not released through the Chapter 11 reorganization plan; and (5) the removal petition was still pending when the state probate court indicated that the issue of whether Gialamas's claims were property of his estate and released under the Chapter 11 plan should be decided by the bankruptcy court.

*Id.* at *9.

**The Amended Complaint for Declaratory Relief.** On remand and without objection, the Court granted Mr. Gialamas leave to amend his complaint. Once again proceeding pro se, he filed his amended complaint on August 15, 2023. (ECF No. 90.) Much of that pleading is taken from his original complaint unchanged, with some additional text added here and there. The major change is the addition of fifteen new paragraphs to the previously single paragraph "Introduction." In a rather scattered fashion, the amended complaint refers to several other alleged proceedings and asks numerous questions – some involving section 4.5(d) and some not.

Also, some of the alleged proceedings involve parties who are not defendants or otherwise parties in this adversary proceeding. For example, in referencing his divorce decree, he asks if "the marital assets and obligation awarded in the divorce decree to Mr. Gialamas' Trust, were discharged" and if his "and his children's beneficial rights are now waived per Sec 4.5(d)?" (*Id.* ¶ 2.) He also asks if "all debts to Mr. Gialamas' father, George Gialamas, who is now deceased discharged?" (*Id.* ¶ 7.) Mr. Gialamas questions whether his "rights as a father are not discharged," (*id.*

¶ 3), alleges that an unspecified entity breached a fiduciary duty to him by failing to disclose more than $1 million in "additional income to Mr. Gialamas' bankruptcy estate," (*id.* ¶ 4) and asks the Court to "compel[] OSTP [to pay] and reimburse Mr. Gialamas" for more than $400,000[4] in taxes he alleges that "he was forced to pay outside of the bankruptcy estate," (*id.* ¶ 5). The amended complaint also asks whether under the Plan one of his companies "indirectly became" an asset of Fiduciary Partners, (*id.* ¶ 6), whether some form of unspecified "agreements of his Trust with his home were exempt," (*id.* ¶ 8), whether some unspecified "several agreements . . . Mr. Gialamas entered into" are enforceable, (*id.* ¶ 9), and whether he can challenge some unspecified "substantial administrative changes" made by Fiduciary Partners, (*id.* ¶ 10).

Fiduciary Partners and OSTP each answered the amended complaint. (ECF Nos. 93, 94.) Noting that many of the additional paragraphs "do not seem to make sense as factual allegations," the Defendants deny most of the additional paragraphs, as well as certain of the other allegations in the amended complaint. They also raise certain affirmative defenses, including failure to state a claim and preclusion by the confirmed Plan.

---

[4] As initially filed, he alleged the amount as $784,000, but Mr. Gialamas filed a "Correction to Amended Complaint" on November 30, 2023, stating that the number was incorrect and should have been "$429,845." (ECF No. 129.) Without objection from the Defendants, the Court treated the amended complaint corrected as stated. In any event, the correction is of little consequence, as Mr. Gialamas failed to present evidence at trial to support – or even explain – this allegation. Additionally, as noted herein, because he failed to identify a plan provision or other source of authority for this Court to now order either Defendant to pay or reimburse him funds, this Court is without jurisdiction over such a request.

**The Case Presented At Trial.** The parties were given ample opportunity to take discovery, but they declined to do so. A full-day trial was held at which Mr. Gialamas testified on his own behalf, and he called and examined Greg Monday, an attorney for Fiduciary Partners and former trustee of the Cosmos II Trust, and Ryan Valentine, the president of Fiduciary Partners. The Court also received in evidence 25 exhibits offered by the Plaintiff and two offered by the Defendants. The Defendants' trial presentation was perfunctory, and they did not call any witnesses in their case in chief. At the conclusion of the evidentiary hearing, the parties declined the opportunity to submit post-hearing memoranda and instead asked to immediately present their closing arguments. The Court concludes from this that Mr. Gialamas has had ample opportunity to clarify what exactly he seeks a declaration on and to identify and offer evidence about the particular matters in which he contends Fiduciary Partners or OSTP has raised section 4.5(d) to preclude claims or as a defense.

At trial Mr. Gialamas presented copies of twelve documents that he filed in the Cosmos Probate Case. (Exs. 2-4, 6-11, 13, 16, 17.) While most of these exhibits consist of filings between February 6, 2020, and December 11, 2020, in the form of letters to the probate judge, all appear to be intended as motions. They were filed – and appear to have been composed – without assistance of counsel, making it difficult to comprehend them. The first four were filed during the two months preceding the confirmation hearing. They indicate that Mr. Gialamas was aware to some extent of the waiver and release sought by the Defendants the possible implications of their

proposal for his claims against them.  For example, his letter dated March 3, 2020,

states: "I have requested that the trust protectors intervene and stop the self-serving

actions of the competing plan in my bankruptcy (which releases the claims I have

against the Trust for their actions.)" (Ex. 4.)

The bulk of Mr. Gialamas' twelve letters/motions involve complaints about

Fiduciary Partners as trustee and his family.  They note instances where he

requested distributions from the TG Cosmos Subtrust and was refused and  lament

the fees and reimbursements Fiduciary Partners paid itself out of trust assets.  He

alleges many of Fiduciary Partners' actions constitute a breach of trust and seeks its

removal as trustee.  Some of his letters/motions also seek to compel the trustee not to

sell trust assets or pay its fees and expenses, or to request the probate court to order

the trustee to honor his requests for distributions.  None seem to seek money damages

against the trustee, except possibly one filed on July 17, 2020.  That letter/motion

first devotes over 74 paragraphs to describe his relations with the trust during the

years before and during the bankruptcy before "ask[ing] the [Probate] Court to find

that [Fiduciary Partners] breached their Fiduciary Duty and award My Trust the

damages it deserves from the horrific acts they have caused." (Ex. 13.)  Of particular

significance, none of his letters/motions specifically identify any acts or omissions

occurring after April 20, 2020.

Mr. Gialamas presented evidence that Fiduciary Partners asserted the waiver

and release in section 4.5(d) of the Plan as a defense in the Cosmos Probate Case, but

this evidence revealed that to involve alleged acts or omissions through April 20,

2020. (Ex. 14.) In a submission to the probate court on or about July 23, 2020, counsel for Fiduciary Partners asserts that section 4.5(d) waives all claims Mr. Gialamas may have against the trustee through April 20, 2020. (*Id.*) Notably, the attorney's submission does not assert the waiver and release with respect to any alleged acts after that date, but rather only disputes those claims on the merits. (*Id.*)[5]

Mr. Gialamas provided evidence that Fiduciary Partners filed an Amended Petition for Approval of Accounts and Activities and for Judicial Instruction on or about July 30, 2020. This petition asked the probate court to approve the trusts' accounts and activities between February 23, 2018, through April 20, 2020. (Ex. 15.) During a general status hearing held by the probate court on July 24, 2020, counsel for Fiduciary Partners raised section 4.5(d)'s waiver and release provision, asserting it provides a defense to Mr. Gialamas' letters/motions and any objection he may have to their petition. Counsel noted that the waiver and release related "to any and all claims against the trustee through April 20, 2020" and that their petition sought "approval of accounts – for the trustee's accounts and activities through that same date, April 20, 2020." (Ex. 31 at 4:2-14.) The attorney inquired, "[t]o the extent that Mr. Gialamas now wants to raise post-April 20th claims against the trustee, we would like to understand the nature of those claims because based on Mr. Gialamas' filings, it's unclear to us." (*Id.* at 6:20-23.) Notably, when asked by the probate court if he was "alleging any occurrences after April 20th," Mr. Gialamas' only response was: "I

---

[5] The brief notes that Mr. Gialamas' suggestion that Fiduciary Partners' retention of counsel to defend it against his motions in the Cosmos Probate Case "could arguably postdate the Effective Date of the Plan and Waiver," but disputes that such actions qualify as a "material breach" of its duties. (Ex. 14.)

think – are there any occurrences after April 20th? I think the main occurrences are before April 20th, Judge." (*Id.* at 10:9-14.)

Pointing out that the trustee's petition only sought approval of amounts prior to April 20, 2020, the probate court found that section 4.5(d) barred Mr. Gialamas from objecting to the trustee's pending request. (Ex. 18 ¶ 6.) Noting that Mr. Gialamas was the only beneficiary who had objected to the petition, the court "approved in all respects" the "trust accounts and administration of" the Cosmos II Trust and TG Cosmos Subtrust from July 13, 2017 through April 20, 2020. (*Id.* ¶¶ 7-9.) The probate court further ruled that Fiduciary Partners was "released and discharged, as trustee, from claims by Tom, Tom's minor children, or any other person who might succeed to a beneficial interest in Tom's Subtrust with respect to the Petitioner's accounts, administration, and activities as trustee of Tom's Subtrust from February 23, 2018 through April 20, 2020." (*Id.* ¶ 11.)

B. <u>Declaratory Judgment Regarding Section 4.5(d)</u>

The Declaratory Judgments Act, 28 U.S.C. § 2201, authorizes federal courts to declare the rights and other legal relations of an interested party seeking declaration, but "is not an independent source of subject matter jurisdiction." *Ameritech Benefit Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 818 (7th Cir. 2000). The statute "allows suits for declaratory judgment where federal jurisdiction would exist in a coercive suit brought by the declaratory judgment defendant." *Id.* (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 19 (1983)). To satisfy the "cases" or "controversies" requirement of article III of the Constitution, a case

seeking declaratory judgment must "be one of 'actual controversy.'" *Harris Tr. & Sav. Bank v. E-II Holdings, Inc.*, 926 F.2d 636, 639 (7th Cir. 1991). The Seventh Circuit has described the scope of matters subject to actual controversy as a case-by-case determination:

> The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Id.* at 639 n.10 (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

In making such determination, the Seventh Circuit has emphasized that "[d]eclaratory judgment actions are ripe and otherwise justiciable when 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). This requires "a 'definite and concrete,' 'real and substantial' dispute that 'touches the legal relations of parties having adverse legal interests' and 'admits of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *MedImmune*, 549 U.S. at 127). To the extent that a declaratory judgment seeks resolution of a potential claim, the Supreme Court has suggested the burden of

proof remains with the party bearing it for such claim. The operation of the Declaratory Judgment Act is intended to be only "procedural" while the burden of proof is a "substantive aspect of a claim." *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20-21 (2000)).

The Court first notes that to the extent the amended complaint seeks a determination of dischargeability of debts to his ex-wife or to his father, the request fails because he never made either a party to this action. To declare the rights between parties having adverse legal interests the court must have personal jurisdiction over all such parties. As the Seventh Circuit has noted, the "often unspoken, but yet obvious, corollary of the 'actual controversy' predicate is that the dispute must exist *between the parties to the declaratory judgment action*." *Harris Tr.*, 926 F.2d at 639-40 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937)). The failure to include the proper party in the action renders the request for declaratory judgment "advisory" and not within the court's "subject matter jurisdiction." *Id.* (citing *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982) (warning that the Court did not sit "to give advisory opinions about issues as to which there are not adverse parties before [it]")). Additionally, Mr. Gialamas did not present evidence at trial on the issues of dischargeability of debts to any nonparty.

Next, the Court finds that to the extent Mr. Gialamas seeks an order compelling OSTP to reimburse him for taxes, to put a "stay" on litigation involving his home, to interpret or enforce unspecified agreements, to modify the trust

agreement or to any of the other questions in his amended complaint not addressed in this Memorandum Decision, such questions were insufficiently articulated and not supported by evidence presented at trial.[6]  Additionally, inasmuch as Mr. Gialamas does not suggest any provision of the Bankruptcy Code under which these requests arise nor explain how these requests require interpretation or enforcement of the Plan, the Court cannot conclude it has jurisdiction over them.

That said, the evidence presented at trial does enable this Court to find that the Plan's waiver and release was asserted by Fiduciary Partners in the Cosmos Probate Case.  Specifically, the trustee raised it as grounds to refuse Mr. Gialamas' requests to remove it as trustee and to enjoin it from taking actions as trustee — but only to the extent Mr. Gialamas' requests were based on alleged acts on or before April 20, 2020.  This Court further finds that the trustee asserted the waiver and release provision in support of their petition seeking the probate court's approval of trust-related accounts and activities through that date.  The probate court ruled in favor of the trustee on those issues in an order dated April 7, 2021.  It determined that Mr. Gialamas is barred from objecting to the petition by 4.5(d) and "approved in all respects" the "trust accounts and administration of" the Cosmos II Trust and TG Cosmos Subtrust from July 13, 2017 through April 20, 2020. (Ex. 18 ¶¶ 8-9.)  The probate court further ordered that Fiduciary Partners was "released and discharged, as trustee, from claims by Tom, Tom's minor children, or any other person who might succeed to a beneficial interest in Tom's Subtrust with respect to the Petitioner's

---

[6] Indeed, the relevant trust agreement governing such questions has not been presented to this Court.

accounts, administration, and activities as trustee of Tom's Subtrust from February 23, 2018 through April 20, 2020." (*Id.* ¶ 11.)

Mr. Gialamas apparently twice sought reconsideration of the probate court's April 7, 2021 order. In each instance his request was denied. On June 3, 2022, the probate court issued a seven-page "Decision and Order" denying Mr. Gialamas' request for reconsideration of the order approving accounts. (Ex. 21.) Although the record before this Court is not entirely clear, the June 3 decision suggests that Mr. Gialamas' series of motions seeking removal of or injunctions with respect to the trustee had all been denied. The opinion noted that Mr. Gialamas "also continues to seek the removal of the Trustee" but that the Trust Agreement "contains a Unity Clause, which requires that the same trustee serve the Subtrust and the other three subtrusts [of Mr. Gialamas' siblings and their issue.]" (*Id.*) Noting that the other beneficiaries had not received notice of and were not parties to Mr. Gialamas' requests and motions, the state court denied them.

Contrary to Mr. Gialamas' suggestion that a court awaits a ruling by this Court regarding section 4.5(d), the evidence presented indicates that all of the litigation identified by Mr. Gialamas has in fact already been decided. The probate court approved the accounts "in all respects" and "released and discharged" Fiduciary Partners "as trustee" from claims asserted by Mr. Gialamas "with respect to the Petitioner's accounts, administration, and activities" as trustee of the Cosmos II Trust from July 13, 2017 through February 23, 2018, and as trustee of the TG Cosmos Subtrust from February 23, 2018 through April 20, 2020. (Ex. 18 ¶¶ 8-11.) Contrary

to Mr. Gialamas' argument to this Court, the evidence presented establishes that the probate court has ruled that Mr. Gialamas' objections to the accounting – which related only to claims prior to April 20, 2020 – were foreclosed by section 4.5(d). (*Id.* ¶ 6.)

It is within the state court's power to do so. General principles "of contract law apply to interpreting a plan of reorganization," as a "confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations." *FCC v. Airadigm Commc'ns, Inc. (In re Airadigm Commc'ns, Inc.)*, 616 F.3d 642, 664 (7th Cir. 2010). State courts have "concurrent jurisdiction to interpret a provision of the confirmed plan as a matter of contract law." *In re Landreth Lumber Co.*, 393 B.R. 200, 205 (Bankr. S.D. Ill. 2008) (citing *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F3d 753, 755 (7th Cir. 2002)). *See also, e.g., Finstad v. Gord (In re Finstad)*, Nos. 05-31470, 18-07060, 2019 Bankr. LEXIS 4017, at *9 (Bankr. D.N.D. Oct. 21, 2019). "Because contract interpretation is an issue of state law, the state courts are perfectly well-suited to interpret the First Amended Plan." *Icco Design/Build, Inc. v. Sunbrite Cleaners, Inc. (In Re Sunbrite Cleaners, Inc.)*, 284 B.R. 336, 342 (N.D.N.Y. 2002) (citation omitted).

While the probate court mentioned the bankruptcy court during its July 24, 2020 hearing, it did not abstain from the issue properly before it. The exhibits presented to this Court indicate that during that hearing, a status hearing on both Fiduciary Partners' petition for approval of accounts and Mr. Gialamas' various motions, the probate court rejected Mr. Gialamas' contention that he was not bound

by the waiver and release provision of the Plan. The state court responded to his arguments, stating: "[w]hatever your argument is it doesn't belong in front of me, it belongs in front of the bankruptcy court" and that he "need[ed] to go to the bankruptcy court if you have issues." (Ex. 31 at 9:10-18.) Taken in context, it is clear that Judge Lanford was not saying that the probate court lacked the authority to interpret or enforce the Plan provision. To the contrary, she stated: "I can't override the bankruptcy court; so I am going to find that under the bankruptcy and under the waiver that was filed by the trustee that you do not have any claims against the trust through April 20th." (*Id.* at 9:12-15.) In other words, Judge Lanford merely recognized, correctly, that she had no authority to vacate, modify or grant relief from this Court's confirmation order and the Plan as confirmed.

Section 4.5(d) broadly waives and releases "all causes of action, controversies, suits, liens, lawsuits, debts, damages, breaches of contract, breaches of fiduciary duties, business torts, or any other claims in law or equity whatsoever" from on or before April 20, 2020. Highlighting that the petition only sought approval of activities through April 20, 2020, the probate court found that all of Mr. Gialamas' objections fell within that clause. The merits of these objections are not before this Court. But even if this Court had authority to second-guess the probate court's ruling or conclusions, which it does not,[7] Mr. Gialamas has not identified any objection he

---

[7] *See, e.g., Fliss v. Generation Cap. I, LLC*, 87 F.4th 348, 353 (7th Cir. 2023) (stating that the *Rooker-Feldman* doctrine bars an "action in federal court that alleges an injury 'inextricably intertwined' with a state court decision, such that success in the federal court would require overturning the state court decision").

raised based on acts occurring after April 20, 2020, or not otherwise within the scope of section 4.5(d).

Granted, the denial of Mr. Gialamas' request to remove Fiduciary Partners as trustee appears to have been without prejudice and based on lack of formal notice to the other beneficiaries and fiduciaries of the related subtrusts. (Ex. 21 at 7.) But Mr. Gialamas has not shown that he asserted any ground other than acts or omissions prior to April 20, 2020, that he contends constitute a breach of trust or breach of fiduciary duty. Such assertions fall within section 4.5(d) as the probate court has ruled.

The same is true of his requests to enjoin Fiduciary Partners from selling trust assets or making trust distributions, which requests appear to be based on the same grounds as that to remove the trustee. His first four letters/motions were filed in the probate court before April 20, 2020, and clearly predate the Plan's effective date. None of his exhibits of the remaining letters/motions reference acts subsequent to April 20, 2020. Instead, these documents all relate to conversations, requests, acts and transactions during 2017, 2018, 2019, and 2020 up to the Plan's effective date. In any event, Mr. Gialamas has not shown that either Defendant has asserted to the state court that acts occurring after April 20, 2020, fall within the Plan's waiver and release provision. Nor could it be reasonably expected otherwise, for the plain language of section 4.5(d) does not foreclose Mr. Gialamas from seeking removal or asserting a breach of trust based on acts or omissions of the Defendants after the Plan's effective date.

Mr. Gialamas also now urges the Court to rule that section 4.5(d) is not binding on "other beneficiaries," suggesting that his children are other beneficiaries of the TG Cosmos Subtrust. But he has not shown that the Defendants have raised the section 4.5(d) waiver and release against other beneficiaries or that he has standing to seek a declaratory judgment on their behalf. The introduction and list of "Parties" found in his amended complaint identify the Plaintiff as "Mr. Gialamas, solely in his capacity as primary beneficiary of the spendthrift TG Subtrust." (ECF No. 90 ¶¶ 1, 19.) He does not list anyone else to be a plaintiff. Generally, "although pro se parents are free to represent themselves in court, they cannot appear as legal representatives for their minor children." *See, e.g., Baratta v. Gates*, No. 3:22-cv-50125, 2023 U.S. Dist. LEXIS 228401, at *7 (N.D. Ill. Dec. 22, 2023) (citing *Navin v. Park Ridge Sch. Dist. 64,* 270 F.3d 1147, 1149 (7th Cir. 2001)). Mr. Gialamas does not explain how he, a non-attorney individual proceeding pro se, is able to represent anyone other than himself in this matter.

Furthermore, he has not established, and the Court cannot infer from the record made available to it that he has standing or authority to represent his minor children as to any interests they may have to the family trusts. He does not dispute that he is divorced from the mother of the minor children, and his own evidence about the state court litigation suggests that there may be a guardian ad litem appointed to represent the children's interests. Mr. Gialamas' Exhibit 31 indicates the appearance of attorney Mark Burish as a guardian ad litem during the probate court hearing held on July 24, 2020. (Ex. 31.) That court's opinion dated June 3, 2022, also

refers to an appearance by "Guardian Ad Litem ('GAL') Mark Burish on behalf of the interest of the minor children." (Ex. 21) The very record from the state court proceedings that Mr. Gialamas presented to this Court weighs heavily against any argument he may now make for declaratory relief for interests other than his own.

Mr. Gialamas' remaining arguments, too, are deeply flawed. He frequently confuses the trust with its trustee and misapprehends the nature of his interest in the trust and of his potential claims. For example, his amended complaint states that the "TG Subtrust never became property of the Estate" and seeks a determination that his claims against Fiduciary Partners "and other fiduciaries of the TG Subtrust, are not property of the Estate." (ECF No. 90 ¶¶ 45, p. 10.) But that is beside the point. The Defendants have not disputed to this Court that the TG Cosmos Subtrust is a valid spendthrift trust and that Mr. Gialamas' beneficial interest in the trust did not become property of his bankruptcy estate. Nor has Mr. Gialamas shown that the Defendants made any such assertion in other courts or other contexts. But that is not why Mr. Gialamas is precluded from asserting pre-April 20, 2020 causes of action against the Defendants. He is barred because section 4.5(d) of the Plan states that on the Effective Date the Debtor and Reorganized Debtor "are deemed to have waived and released any and all causes of action, . . . or other claims . . . that the Debtor has, or can have at any point in time prior to the Effective Date" against the named releasees. That Plan was confirmed and became final. "A confirmed plan is a document that is legally binding upon all parties, including creditors, equity interest holders, debtors, and others within the court's jurisdiction whether or not they

consented to the plan." 4 Norton Bankr. L. & Prac. 3d § 114:1.  With exceptions not
applicable here, "the provisions of a confirmed plan bind the debtor . . . and any
creditor . . . whether or not such creditor . . . has accepted the plan." 11 U.S.C.
§ 1141(a).  Mr. Gialamas has not sought to vacate the confirmation order or modify
the Plan – and indeed it is likely too late at this point for him to attempt to do so. *See,
e.g.*, 11 U.S.C. § 1144 (request to revoke order of confirmation must be made within
180 days).

Mr. Gialamas similarly seems to have a misguided notion that his obligations
under a divorce decree are somehow connected to section 4.5(d)'s waiver and release
of his claims against the Defendants and other fiduciaries.  His amended complaint
alleges the "Probate and Family Court, requested this Court to determine if the
[marital] assets and obligation awarded in the divorce decree to Mr. Gialamas' Trust,
were discharged.  If Mr. Gialamas and his children's beneficial rights are now waived
per Sec 4.5(d)?" (ECF No. 90 ¶ 2.)  But the evidence presented reveals that those
courts did not ask for this Court's determination, but rather have already correctly
ruled.  The divorce court ruled that the "parties' obligations as to property division
and debt allocation as set forth in the divorce decree dated June 1, 2018, cannot be
discharged in a Federal Bankruptcy Chapter 11 proceeding, and therefore all
property and debt allocation of the divorce decree stands." (Ex. 20.)  That is because
section 1141(d)(2) of the Bankruptcy Code provides that a discharge under chapter
11 "does not discharge a debtor who is an individual from any debt excepted from
discharge under section 523." 11 U.S.C. § 1141(d)(2).  Sections 523(a)(5) and (15)

except from discharge debts "for a domestic support obligation" and other obligations to a spouse, former spouse, or child of the debtor "that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit." 11 U.S.C. §§ 523(a)(5), (15).

State courts have concurrent jurisdiction to determine the dischargeability of debts – other than under Section 523(a)(2), (4) or (6) – and therefore can determine the nondischargeability of divorce-related debts. *Harshaw v. Harshaw (In re Harshaw)*, 26 F.4th 768, 776 (7th Cir. 2022); *Eden v. Robert A. Chapski, Ltd.*, 405 F.3d 582, 586 (7th Cir. 2005). "Where a prior tribunal has decided the issue of dischargeability within its own jurisdiction, bankruptcy courts must give full faith and credit to that decision if it meets the necessary requirements for issue preclusion under state law." *Harshaw*, 26 F.4th at 776.

After the divorce court determined that Mr. Gialamas' divorce-related obligations were non-dischargeable, he apparently argued to the probate court that it should vacate or modify its earlier approval of the accounts of Fiduciary Partners. But as the probate court correctly ruled, the "legal significance of whether his divorce decree is dischargeable in bankruptcy has nothing to do with whether the [section 4.5(d)] Release is enforceable." (Ex. 21 at 6.) Therefore, this Court must conclude that the state court is not seeking any determination from this Court on the effect of section 4.5(d).

Some of Mr. Gialamas' letters/motions to the probate court appear to request an order directing the trustee to make distributions to him. (*See, e.g.*, Ex. 6 ("I once again ask the court for attorney fees and cost."); Ex. 17 (motion title includes phrase "MOTION TO COMPEL THE TRUST TO PROVIDE APPROPRIATE FUNDS").) Indeed, one of Mr. Gialamas' primary complaints in those filings and in his testimony and arguments before this Court involves the trustee's failure to honor his requests for distributions. That seems to be at least part of why he connects the trust issues to the divorce – believing that he should be entitled to a distribution from the trust to pay required obligations in the divorce. But he fails to establish that the state court rulings involved the application of section 4.5(d). His own exhibits reveal that the trustee complained to the probate court "that Gialamas made frequent requests for sums in excess of $100,000, and would not comply with its procedures, particularly refusing to provide requested financial information to enable the Trustee to evaluate requests." (Ex. 21 at 2.) The court "concluded that the Subtrust did not confer a right on Gialamas to receive cash on demand and that the Trustee has broad discretion in approving distribution requests." (*Id.* at 3.) It then approved the trustee's proposed procedures and "noted that the Trustee may refuse to evaluate distribution requests from Gialamas if it did not comply with those procedures." (*Id.*) As the very record on which Mr. Gialamas relies makes clear, neither Fiduciary Partners' argument in opposition to the requested distributions nor the grounds for the probate court's refusal of his requests were based on section 4.5(d) of the confirmed Plan.

## III.  CONCLUSION

The Court finds that section 4.5(d) of the confirmed Plan means what it says. Defendant OSTP is a named entity in section 4.5(d) and it is undisputed that Defendant Fiduciary Partners is an employee, fiduciary, attorney or advisor of the Thomas G. Gialamas Cosmos II Trust.  Therefore, pursuant to section 4.5(d), Mr. Gialamas is deemed to have waived and released any and all causes of action, controversies, suits, liens, lawsuits, debts, damages, breaches of contract, breaches of fiduciary duties, business torts, or any other claim in law or equity that Mr. Gialamas had or could have had against these Defendants on or prior to April 20, 2020.  This includes actions seeking damages for acts or omissions on or prior to the Effective Date of the Plan, April 20, 2020, and any requests to remove Fiduciary Partners as trustee of the Thomas G. Gialamas Cosmos II Trust to the extent solely based on events or omissions from on or before April 20, 2020.  Section 4.5(d) by its own terms does not apply to acts or omissions taken after April 20, 2020, nor would it preclude a request to remove Fiduciary Partners as trustee pursuant to Wisconsin law for a reason other than an act or omission that occurred prior to April 20, 2020.  As Mr. Gialamas has not identified any attempt by the Defendants to assert section 4.5(d) in a manner broader than its scope, the Court finds no need to issue any injunction or further relief. It has not been shown that the state court's rulings are inconsistent with this determination.

A separate judgment order will be entered concurrent with this Memorandum Decision.  Each side shall bear their own costs of suit.

March 27, 2024

ENTER:

Thomas M. Lynch
United States Bankruptcy Judge